In re Harold Frederick **BUCK**, also known as Harry Buck, also known as Harry F. Buck, doing business as Buck Law Offices, Debtor.

Raymond **BERGER**, Plaintiff—Appellant,

v.

Harold F. **BUCK**, Defendant—Appellee.

BAP No. WY–98–005.
Bankruptcy No. 94–20409.
Adversary No. 94–2025.

United States Bankruptcy Appellate Panel of the Tenth Circuit.

June 1, 1998.

---

Submitted on the briefs: *

Richard Silverstein, Denver, CO, and Franklin Bayless of Bayless, Slater & Macy, Cheyenne, WY, for Plaintiff–Appellant.

Ken McCartney, Cheyenne, WY, for Defendant–Appellee.

Before PUSATERI, CLARK, and ROBINSON, Bankruptcy Judges.

OPINION

PUSATERI, Bankruptcy Judge.

This Court has before it for review a judgment of the United States Bankruptcy Court for the District of Wyoming, entered after a bench trial, that determined a debt to be dischargeable under 11 U.S.C.A. § 523(a)(6). The creditor, Raymond Berger ("Berger"), asks us to consider whether the bankruptcy court erred in finding the prepetition actions of chapter 7 debtor Harold F. Buck ("Debtor") had not inflicted a "willful and malicious injury" on him. Debtor raises a preliminary issue, suggesting we should reverse the bankruptcy court's order that extended Berger's appeal time on the ground Berger failed to allege the required "excusable neglect." For the reasons stated below, we decline to reverse the extension order and we AFFIRM the bankruptcy court's decision on the dischargeability question.

I. Background

Berger suffered a work-related injury on November 11, 1986, at his place of employment, Bridger Coal Company. In November 1987, he retained Debtor on a contingent fee basis to represent him in personal injury litigation related to the accident. Debtor filed a lawsuit on Berger's behalf against several defendants, including Bridger Coal Company and Page Engineering Company. With Berger's consent, the case against Bridger Coal Company and the other defendants was settled in March 1989 for $195,000, leaving Page Engineering as the only remaining defendant.

Debtor initially thought the cause of action against Page Engineering was of minimal value and made a settlement offer of $100,-000. Sometime later, Page Engineering offered to pay $103,000. By then, however, Debtor had discovered evidence that he believed greatly enhanced the potential for recovery against Page Engineering and had raised Berger's settlement offer to $739,700.

Just before the first trial date, Page Engineering increased its offer to $200,000. Debtor responded to Page Engineering's attorney by letter, indicating he would consult with his client that same evening to confirm Berger's rejection of the new offer. The original trial date was continued. Whether these settlement offers from Page Engineering were ever communicated to Berger by Debtor's law office was greatly disputed. Debtor reiterated the rejection of the $200,-000 offer in a letter to Page Engineering's counsel just before the continued trial date.

The rescheduled trial was never held, however, because the trial court determined all claims in Page Engineering's favor on summary judgment. No request for summary judgment had been pending on the definitive question decided by the trial court, although summary judgment motions on collateral issues had been filed. The order came as a surprise to both Debtor and counsel for Page Engineering. The trial court's order was affirmed by the Tenth Circuit Court of Appeals, and Berger's claims against Page Engineering were extinguished.

Berger sued Debtor on various theories of legal malpractice and prevailed in the lawsuit with a jury award of $150,000 on a breach of contract claim. Consequently, Debtor filed his voluntary chapter 7 bankruptcy petition, and Berger filed a complaint pursuant to 11 U.S.C.A. § 523(a)(4) and (6) seeking to have

---

* After examining the briefs and appellate record, the Court has determined unanimously that oral argument would not materially assist in the determination of this appeal. *See* Fed. R. Bankr.P. 8012; 10th Cir. BAP L.R. 8012–1(a). The case is therefore ordered submitted without oral argument.

the debt declared nondischargeable. The bankruptcy court granted summary judgment in favor of Debtor on the § 523(a)(4) issue; that order has not been appealed.

Berger argued that Debtor, while acting as Berger's attorney, engaged in willful and malicious conduct that resulted in financial injury to Berger. This alleged misconduct was: (1) the failure to advise Berger of settlement offers made during litigation; and (2) the failure to advise Berger concerning the concepts and effects of summary judgment and comparative negligence law. Had Berger realized the effect of these legal concepts, he argues, he would have accepted one of the settlement offers. Berger contends that the malpractice judgment against Debtor is excepted from discharge pursuant to § 523(a)(6), which provides that a debtor is not discharged from any debt "for willful and malicious injury by the debtor to another entity or to the property of another entity."

The bankruptcy court found no intentional or malicious conduct from the direct evidence or the circumstances surrounding the actions taken during the litigation, and entered judgment discharging Debtor's obligation to Berger. The bankruptcy court began its analysis by setting forth the meaning of "willful" and "malicious" in § 523(a)(6) as discussed in Tenth Circuit decisions. *C.I.T. Financial Services, Inc. v. Posta (In re Posta)*, 866 F.2d 364, 367 (10th Cir.1989), states that willful conduct is intentional conduct over which the debtor has meaningful control. This deliberate and volitional conduct is distinguishable from negligence or recklessness. *Dorr, Bentley & Pecha, CPA's, P.C., v. Pasek (In re Pasek)*, 983 F.2d 1524, 1527 (10th Cir.1993), states that malice can be demonstrated by direct evidence that the debtor acted specifically to cause harm to the creditor, or by evidence of the debtor's actual knowledge or the reasonable foreseeability that his conduct will result in injury. Even if injury is reasonably foreseeable, however, the factfinder must also examine any evidence of the debtor's motives, including any claimed justification or excuse, to determine whether the requisite "malice" is present. *Id.*

With those standards in mind, the bankruptcy court analyzed the facts of this case. After acknowledging that the parties disputed whether Debtor communicated the settlement offers to Berger, the bankruptcy court concluded that, even if Debtor did not convey either of the settlement offers to Berger, such a failure was not willful and malicious conduct. The bankruptcy court found no direct evidence that Debtor intended to harm Berger, nor any evidence to support a finding that Debtor had a motive to harm Berger. The bankruptcy court rejected Berger's argument that Debtor was benefitted when he used the Bridger Coal settlement proceeds to fund the Page Engineering litigation in disregard of Berger's best interest. Such actions may be negligent or selfish, the bankruptcy court stated, but they do not constitute malice. Finally, the bankruptcy court found that the evidence supported Debtor's statement that no one had anticipated the summary judgment decision. Even if foreseeable, however, Debtor's motive could not have been to deliberately harm Berger because doing so would also have harmed Debtor himself by eliminating his contingent fee share of Berger's potential recovery from Page Engineering. Debtor did not profit by the alleged omissions and the bankruptcy court could not conclude that Debtor acted in disregard of Berger's rights in a malicious manner.

The bankruptcy court's decision was entered on July 26, 1995. On August 15, 1995, Berger filed a motion for an extension of time in which to file a notice of appeal, requesting an extension until August 25, 1995. Berger's counsel alleged in this motion that excusable neglect justifying an extension existed because he had received the decision on July 31, Berger had been out of town and counsel was unable to contact him until August 12, and so they had not been able to consult about the possibility of an appeal before the ten-day appeal time had run. Without explanation, the day after the motion was filed, the bankruptcy court entered an order granting the extension. No hearing was held, nor did Debtor contest the order before the bankruptcy court.

## II. Jurisdiction and Standard of Review

Untimely filing of a notice of appeal is a jurisdictional defect that deprives the appellate court of jurisdiction to review the bankruptcy court's judgment. *Deyhimy v. Rupp (In re Herwit)*, 970 F.2d 709, 710 (10th Cir. 1992). The bankruptcy court's decision on a motion for extension of time to file an appeal is reviewed under an abuse of discretion standard, as is the bankruptcy court's determination of the existence of excusable neglect. *Key Bar Investments v. Cahn (In re Cahn)*, 188 B.R. 627 (9th Cir. BAP 1995).

In reviewing an order of the bankruptcy court, an appellate court "reviews the factual determinations of the bankruptcy court under the clearly erroneous standard, and reviews the bankruptcy court's construction of [a statute] de novo." *Taylor v. I.R.S.*, 69 F.3d 411, 415 (10th Cir.1995) (citations omitted).

> A finding of fact is clearly erroneous only if the court has "the definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948). "It is the responsibility of an appellate court to accept the ultimate factual determination of the fact-finder unless that determination either (1) is completely devoid of minimum evidentiary support displaying some hue of credibility, or (2) bears no rational relationship to the supportive evidentiary data." *Krasnov v. Dinan*, 465 F.2d 1298, 1302 (3d Cir.1972).

*Gillman v. Scientific Research Prods. Inc. (In re Mama D'Angelo, Inc.)*, 55 F.3d 552, 555 (10th Cir.1995).

## III. Discussion

### A. Timeliness of the appeal.

■ Fed. R. Bankr.P. 8002 governs timeliness of appeals. Rule 8002(a) provides that a "notice of appeal shall be filed with the clerk within 10 days of the date of the entry of the judgment, order, or decree appealed from." Although it has since been amended, at the time the bankruptcy court's decision was entered, subsection (c) permitted the court to grant an extension of time to file the notice of appeal "not to exceed 20 days from the expiration" of the ten-day period. The rule further provided, in relevant part:

> A request to extend the time for filing a notice of appeal must be made before the time for filing a notice of appeal has expired, except that a request made more than 20 days after the expiration of the time for filing a notice of appeal may be granted upon a showing of excusable neglect....

Fed. R. Bankr.P. 8002(c), *reprinted in* Norton Bankr.Rules Pamphlet 1996–97 Edition at 561 (before rule was amended effective December 1, 1997). Since Berger filed the motion to extend after the ten-day period had expired, the bankruptcy court had discretion to grant the motion only on a showing of excusable neglect.

■ The standard for excusable neglect is that set forth by the Supreme Court in *Pioneer Investment Services Co. v. Brunswick Associates Ltd. Partnership*, 507 U.S. 380, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993). In that case, the Court adopted a more lenient interpretation of the phrase "excusable neglect" than many courts had been using, saying it can, where appropriate, include situations where a late filing was caused "by inadvertence, mistake, or carelessness, as well as by intervening circumstances beyond the party's control." *Id.* at 388, 113 S.Ct. at 1495. The Court concluded that the determination of what sorts of neglect are excusable "is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission." *Id.* at 395, 113 S.Ct. at 1498. Relevant circumstances include the danger of prejudice to opposing parties, the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was in the reasonable control of the late-filer, and whether the late-filer acted in good faith. *Id.*

Debtor argues on appeal that Berger's motion failed to set forth excusable neglect justifying the bankruptcy court's extension of the time to appeal. The record on appeal does not indicate whether Berger's counsel served the motion on Debtor, as required by Fed.R.Civ.P. 5(a) (made applicable in adver-

sary proceedings by Fed. R. Bankr.P. 7005), although counsel asserts in his reply brief that the motion was sent to Debtor's counsel. We note that, assuming proper service was made, Berger would have had time to amend the motion had Debtor promptly made the objection he has instead raised for the first time on appeal, and might have explained more fully the circumstances surrounding the failure to seek an extension within the initial ten-day appeal period. Instead, because the motion was granted the day after it was filed and Debtor did not complain until he filed his brief in this appeal, Berger had no reason to offer any more explanation.

■ Since the bankruptcy court's order granting the extension made no specific finding of excusable neglect, we must look to Berger's motion to see whether circumstances were alleged that might qualify as excusable neglect. The motion indicates that counsel received the bankruptcy court's decision after half of the original appeal time had run, and was unable to discuss a possible appeal with Berger because he was out of state until after the ten-day appeal period had run. Debtor cites only one case to support his claim Berger's allegations do not amount to excusable neglect, *Siegel v. Bahre (In re Bahre)*, 30 B.R. 367 (Bankr.D.Conn. 1983), a decision issued long before the Supreme Court decided *Pioneer*. We agree with Debtor that the circumstances alleged would not have satisfied the strict standard for excusable neglect that the court applied in *Bahre*, but after *Pioneer*, that standard can no longer be applied. We would also agree that when counsel cannot contact his or her client about the possibility of appealing, it would be wiser to file a motion for extension before the initial ten-day appeal time runs. However, we are not prepared to rule that the bankruptcy court abused its discretion by granting Berger's motion. Debtor has not alleged—and we find it hard to imagine that any debtor could truthfully allege—that he suffered any prejudice by relying on the finality of the bankruptcy court's decision that his debt to Berger was dischargeable. Berger's delay was short and had at most a minimal impact on judicial proceedings. Under the circumstances, we will not reverse the order granting the extension of the appeal time.

### B. Dischargeability of the debt.

■ Section 523 (a)(6) of the Bankruptcy Code provides that any debt for "willful and malicious injury by the debtor to another entity or to the property of another entity" is not dischargeable. The creditor has the burden to prove by a preponderance of the evidence that the debt is nondischargeable. *See Grogan v. Garner*, 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). As it was then required to do, the bankruptcy court applied the Tenth Circuit's decisions in *Pasek* and *Posta* when it determined that Debtor did not act willfully and maliciously in failing to settle Berger's lawsuit before the district court granted summary judgment for Page Engineering. Recently, the Supreme Court provided its own interpretation of § 523(a)(6) in *Kawaauhau v. Geiger*, —— U.S. ——, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998). Disagreeing with the Tenth Circuit, among others, the Supreme Court ruled the provision requires a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury. —— U.S. at ——–——, 118 S.Ct. at 977–78. While subsequent binding rulings that change the law a trial court must apply in deciding a case often will require an appellate court to vacate the trial court's decision and remand the case for application of the new ruling, this is not so here. The Supreme Court's decision in *Geiger* narrows the field of debts that are covered by § 523(a)(6). Since the bankruptcy court determined that Berger had failed to show Debtor's obligation to him satisfied the Tenth Circuit's broader interpretation of "willful and malicious injury," it would obviously also have decided the debt was dischargeable under the stricter *Geiger* standard. Indeed, the court specifically found that there was no evidence supporting a finding that Debtor had a motive to harm Berger.

■ Berger asks us to reverse the bankruptcy court's determination that Debtor did not inflict a willful and malicious injury on him. This ultimate finding is reviewed under the clearly erroneous standard. *See Pasek*, 983 F.2d at 1528 (while *Geiger* overruled part of *Pasek*, the portion concerning

the standard of review was not affected); Fed. R. Bankr.P. 8013. "In any appeal, the burden of providing the appellate court with an adequate record for review is on the appellant." *In re Rambo*, 209 B.R. 527, 530 (10th Cir. BAP 1997) (citations omitted), *aff'd without op.*, 132 F.3d 43 (10th Cir.1997). Without a transcript of all the evidence presented to the bankruptcy court, we cannot determine whether its decision was not supported by at least minimum credible evidence or bore no rational relationship to the supportive evidence. This facet of appellate procedure flows from the fact an appellant is asking the appellate court to declare that the trial court committed an error so significant that the lower court's decision must be vacated or otherwise altered. Berger mistakenly believes he was free to approach this appeal as litigants do a trial, presenting to us only the evidence favorable to him (his attorney's direct examination of his witnesses), and requiring Debtor to present the opposing evidence. This approach would make an appeal nearly, if not completely, a new trial rather than merely a review of the trial court proceeding to ensure that no important errors were made.

## IV. Conclusion

Applying the Tenth Circuit's pre-*Geiger* standard for determining whether a debt arose from a "willful and malicious injury" covered by § 523(a)(6), the bankruptcy court found that Debtor's obligation to Berger did not meet that standard. The narrower *Geiger* standard eliminates from coverage some debts that would have met the Tenth Circuit's standard, but does not add any. Consequently, we can declare that the bankruptcy court would also have found the *Geiger* standard was not met. Furthermore, in light of Berger's failure to supply us with a transcript of all the evidence presented to the bankruptcy court, we cannot review—and must accept—the propriety of that court's ultimate finding that Debtor did not inflict such an injury on Berger. Accordingly, the judgment of the bankruptcy court is AFFIRMED.