In re Ronald W. BURRESS d/b/a ASR Solutions and ASR Systems & Peripherals, Inc., Debtor.

Solar Systems And Peripherals, Inc., Plaintiff,

v.

Ronald W. Burress, Defendant.

Bankruptcy No. 99–14768 CEM.
Adversary No. 99–1382 CEM.

United States Bankruptcy Court, D. Colorado.

March 7, 2000.

Stephen A. Hess, Sparks Willson Borg-
es, Brandt & Johnson, P.C., Colorado

Springs, CO, for Solar Systems & Peripherals, Inc., Plaintiff.

Robert J. Mason, Colorado Springs, CO, for Ronald W. Burress, Defendant.

## ORDER GRANTING MOTION FOR SUMMARY JUDGMENT

CHARLES E. MATHESON, Chief Judge.

On November 30, 1999, the Plaintiff, Solar Systems and Peripherals, Inc., ("Plaintiff") filed Plaintiff's Motion for Summary Judgment ("Motion") seeking a determination that the judgment entered in its favor in state court is nondischargeable pursuant to 11 U.S.C. § 523(a)(4) and (6). The Plaintiff asserts that collateral estoppel applies to the facts which form the basis for the state court judgment and asks for summary judgment on that basis.

The Plaintiff's Motion is supported by a copy of a Settlement Agreement which was entered into in the state court action by the Plaintiff and the Debtor (Exhibit A to the Complaint and the Motion) ("Settlement" and "Exhibit A"); a copy of a Confession of Judgment and Stipulation (Exhibit B to the Complaint and the Motion) ("Confession" and "Exhibit B"); a correction of the state court judgment (Exhibit C to the Complaint and the Motion) ("Corrected Judgment" and "Exhibit C"); and the affidavit of Paul Cooke, the president of the Plaintiff ("Affidavit"). The Debtor filed Defendants (sic) Reply Brief Re: Motion for Summary Judgment ("Debtor's Brief"). In Debtor's Brief, and in his Answer, the Debtor acknowledges the authenticity of the documents and also relies on them but urges an interpretation different than that propounded by the Plaintiff. He does not attach any affidavits in support of his response. Essentially, there is no dispute about the underlying facts as they are established by Exhibits A, B and C and the Affidavit.

This dispute arises out of an employer-employee relationship. The Plaintiff bought and sold computer systems and their peripherals and it employed the Debtor as a sales representative. Plaintiff hired Debtor on April 16, 1993 and they entered into an employment contract on March 28, 1995. During the course of his employment, Debtor established relationships with Plaintiff's vendors and customers such that beginning in June of 1993, he engaged in a pattern of conduct whereby he personally received payments from some of the customers of the Plaintiff of $141,550 related to the sales of computer equipment and their peripherals. He received these payments between November of 1993 and May of 1995. The computer equipment was bought from a competitor of the Plaintiff and sold to a customer of the Plaintiff.

Shortly thereafter, Plaintiff fired Debtor and Debtor commenced a wrongful termination action against the Plaintiff in state court in the State of Washington ("State Court Action"). The Plaintiff counter-claimed alleging misappropriation of trade secrets, breach of fiduciary relationship, unlawful conversion and breach of a duty of loyalty.

Approximately one year and four months into the litigation, the parties entered into the Settlement. Exhibit A, and Confession, Exhibit B. The terms of the Confession were incorporated into the Settlement by reference. One of the terms of the Settlement provided that upon the default of the Debtor, Plaintiff could obtain entry of judgment in its favor in accordance with the terms of the Settlement and Confession. Plaintiff would not file the Confession unless and until Debtor defaulted in payment. The Debtor defaulted, the Plaintiff filed the Confession and on April 18, 1997, the state court entered judgment.

The Plaintiff argues that the terms of the Settlement and Confession bind the Debtor and bar him from relitigating the issues in the bankruptcy court. The Plaintiff relies on certain salient terms of the Settlement and Confession. The Debtor,

on the other hand, defends on only two grounds. The Debtor argues that the Settlement on its face does not state that the judgment is for a breach of fiduciary duty and is simply a judgment for a dollar amount. The Debtor encourages the Court to read the Settlement and Judgment and determine that the debt has been discharged. Secondly, or alternatively, Debtor asserts that the judgment has been satisfied from various sources.

The provision of the Settlement upon which the Plaintiff primarily relies is one in which the Debtor admits that he intentionally injured Plaintiff and is as follows:

> (Debtor) agrees that the payments to be made to Solar Systems pursuant to Section 4.1 of this Agreement constitute a debt arising from injuries intentionally inflicted on the entity or property of Solar Systems, as set forth in Section 5 below, and agree that said debt is excepted from discharge under the United States Bankruptcy Code. (Debtor) further agrees that said payments are compensation to Solar Systems for (his) "willful and malicious injury" (as that term is defined in 11 U.S.C. § 523(6) of the Bankruptcy Code) to Solar Systems as an entity and/or to its property, proximately caused by the breach of his duty of loyalty owed to Solar Systems, as further set forth in section 5 below, and more fully described in the Confession of Judgment and Stipulation and Judgment attached as Exhibit C hereto. (Debtor) further agrees that he will not seek a discharge under the United States Bankruptcy Code of his debt obligation to Solar Systems arising under this Settlement Agreement. . . . Settlement, Section 4.6.

Section 5 of the Settlement, captioned Limited Admission of Liability, (referenced in Section 4.6 above) provides:

> It is understood and agreed by the undersigned that this Settlement Agreement is entered into by the parties for the purpose of avoiding further litigation, and that nothing in this Settlement Agreement is to be construed an admission of liability on the part of the (Debtor), except to the extent that (Debtor) admits he breached a duty of loyalty owed to his employer, defendant Solar Systems, as more fully set forth in the Confession of Judgment and Stipulation that is attached hereto as Exhibit C and incorporated herein by reference. Solar Systems withdraws its allegations of unlawful conversion against the (Debtor), except that Solar Systems expressly reserves the right to seek and obtain restitution under state and/or federal criminal laws for the value of any of its property found in a criminal proceeding to have been unlawfully converted by the (Debtor).

The Debtor's argument that the judgment is only for a specific amount and does not speak to breach of fiduciary duty is borne out by the exhibits only to a limited degree. The Confession contains at page 2 a section captioned "Confession of Judgment" and a Judgment Upon Confession and Stipulation at page 14 of Exhibit B which recites only that the Debtor confesses to judgment in favor of the Plaintiff in dollar amount. The section captioned "Confession of Judgment" is followed by a complete recitation of the facts which demonstrate Debtor's breach of his duty of loyalty to the Plaintiff as follows:

> This Confession of Judgment is for the purpose of securing (Debtor) from tort liability arising from a counterclaim filed by Solar Systems & Peripherals, Inc., asserting that (Debtor) breached a duty of loyalty owed to his employer Solar Systems & Peripherals, Inc. Solar Systems withdraws its allegations of unlawful conversion against the (Debtor), except that Solar Systems expressly reserves the right to seek and obtain restitution under state and/or federal criminal laws for the value of any of its property found in a criminal proceeding to have been unlawfully converted by (Debtor). The assertions (sic) that (Debtor) breached a duty of loyalty

owed to his employer Solar Systems and Peripherals, Inc. is shown by the following stipulated facts: ...

5. (Debtor) was a resident of King County, Washington from April, 1993 until on or about August 1, 1996.(He) resided with his wife, Sondra Powell, throughout this period of time and the period of his employment by Solar Systems, and all acts described below on the part of the (Debtor) constituting a breach of his duty of loyalty owed to Solar Systems, upon which this confession of judgment is based, were done on his own behalf and for the benefit of his spouse and the marital community which they formed.

6. At all material times to this action, Solar Systems was in the business of buying and selling computer systems and their peripherals. Solar Systems had established business relationships with numerous buyers and sellers of computer equipment and their peripherals prior to and independent of its employment of the (Debtor). (Debtor) was employed by Solar Systems on April 16, 1993, as a sales representative, pursuant to an employment contract signed by the (Debtor) on March 28, 1995. In this capacity, he served as an agent on behalf of Solar Systems in dealing with entities wishing to acquire and/or sell new or used computer equipment and peripherals. Solar Systems had a reasonable expectancy of economic gain resulting from such transactions and (Debtor) fully knew and understood these expectations on the part of Solar Systems.

7. (Debtor) was a key employee of Solar Systems and as a sales representative had complete access to Solar Systems' confidential information and trade secrets, including without limitation its customers and vendors and the prices at which it bought and sold computer systems and their peripherals. (Debtor) also became familiar with Solar Systems' customers and suppliers, and confidential information peculiar to the needs and requirements of said customers and suppliers.

8. During the period of his employment by Solar Systems, (Debtor) engaged in a pattern of conduct unknown to Solar Systems and without its consent, expressed or implied, which had an adverse economic effect on the business of Solar Systems and its relationships with it customers and vendors. (Debtor) appropriated for himself and his own business, of which Solar Systems had no knowledge during the term of (Debtor's) employment, and appropriated on behalf of other entities that were rivals or competitors of Solar Systems, certain business opportunities and expectations that he should have directed to Solar Systems under the duty of loyalty owed to his employer. (Debtor) intended and knew that the appropriation of these business opportunities and expectancies would and did cause economic harm to Solar Systems.

9. During the period of his employment by Solar Systems, (Debtor) on his own behalf and while acting in direct competition with his employer, received payments related to the sales of computer equipment and their peripherals from certain customers of Solar Systems in the amount of $141,-550.50....

10. (Debtor) intentionally concealed his competitive activities from Solar Systems. Most of the payments received by (Debtor) were ... mailed to his residence and made payable to his spouse ....

11. Solar Systems suffered economic damages as a result of (Debtor's) competitive activities, including without limitation lost profits and damage to its business relationships with its customers and vendors.

12. The (Debtor's) conduct, including without limitation his competitive activities with his employer Solar Systems, was without just cause or excuse, and his conduct was not privileged, justified or otherwise conducted in good faith.

13. The (Debtor) had a duty as an employee and agent of Solar Systems of non-interference with its customers and suppliers and the business expectancies and opportunities of Solar Systems, including without limitation the duty of not competing with Solar Systems while (Debtor) was in its employ.

The standard for the granting of summary judgment has been stated by the Tenth Circuit Court of Appeals as follows:

Summary judgment is appropriate when the materials submitted to the court "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." What facts are material depends on the substantive law being applied. Although we view the evidence in the light most favorable to the party opposing summary judgment, disputes about immaterial facts will not preclude summary judgment. Should a non-moving party make some showing on a material issue, we must consider the standard of proof in the case (here, a preponderance of evidence) and decide whether the showing is sufficient for a reasonable trier of fact to find for the non-moving party on that issue. A scintilla of evidence in favor of the non-moving party is not enough to preclude summary judgment. Moreover, should a non-moving party not make a sufficient showing on any essential element of his case, all other facts are rendered immaterial, and summary judgment is appropriate. *Kaiser–Francis Oil Co. v. Producer's Gas Co.*, 870 F.2d 563, 565 (10th Cir.1989) (citations omitted.)

See also, *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Windon Third Oil & Gas v. Federal Deposit Insurance Corp.*, 805 F.2d 342 (10th Cir.1986).

In an action under section 523(a), the plaintiff has the burden of proof and it is the Plaintiff that is the moving party. Thus, the Plaintiff must establish its case with or without supporting affidavits demonstrating that there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law.

The Plaintiff here seeks to do so upon the record, particularly the Settlement, Confession and the State Court Judgment. While the determination of whether a debt is dischargeable under section 523(c) is exclusively within the province of the bankruptcy court, *Grogan v. Garner*, 498 U.S. 279, 111 S.Ct. 654, 658, 112 L.Ed.2d 755 (1991) citing *Brown v. Felsen*, 442 U.S. 127, 129–130, 136, 99 S.Ct. 2205, 2209–2209, 2211, 60 L.Ed.2d 767 (1979), the facts which may form the basis for such a determination may be litigated in state court. *In re Tsamasfyros*, 940 F.2d 605, 606–607 (10th Cir.1991) citing *In re Wallace*, 840 F.2d 762, 764–765 (10th Cir.1988). The doctrine of collateral estoppel is applicable in order to preclude relitigation of factual issues. The Tenth Circuit Court of Appeals has specifically held in these actions that:

Collateral estoppel is binding on the bankruptcy court and precludes relitigation of factual issues if (1) the issue to be precluded is the same as that involved in the prior state action, (2) the issue was actually litigated by the parties in the prior action, and (3) the state court's determination of the issue was necessary to the resulting final and valid judgment. *In re Wallace*, 840 F.2d 762, 764 (10th Cir.1988).

See also, *In re Tsamasfyros*, 940 F.2d 605, 606–607 (10th Cir.1991); *In re Mueller*, 34 B.R. 869 (Bankr.D.Colo.1983); *In re Austin*, 93 B.R. 723 (Bankr.D.Colo.1988).

■ This case involves not findings of fact and conclusions of law made by a court after a trial before it but a stipulation between the parties to litigation, a confession of judgment and an order entered pursuant to the terms of the confession of judgment. Confessions of judgment have been recognized as forming a basis for collateral estoppel as to the facts stipulated to. *In re Hansen,* 131 B.R. 167 (D.Colo.1991) *aff'd by* 977 F.2d 595 (10th Cir.1992).

Debtor only tacitly attacks the elements which must be found for collateral estoppel to apply by asserting that the judgment does not speak to a breach of fiduciary obligation. The terms of the Stipulation and Confession quoted above negate that argument completely. The Stipulation and Confession and the judgment within the Confession clearly cross reference and incorporate all of the facts which demonstrate the Debtor's breach of fiduciary duty. Because Debtor does not genuinely dispute any of the elements of collateral estoppel, nor, for that matter, does he offer any argument at all about the significance of his admissions in the Stipulation and Confession, the real issue presented to this Court is whether the foregoing stipulations are sufficient to establish the elements of an action under sections 523(a)(4) or (6) and, if so, can summary judgment be granted in favor of Plaintiff that its judgment is excepted from the discharge in this case.

Section 523(a)(4) excepts from discharge debts which result from a fraud or defalcation while acting in a fiduciary capacity. Section 523(a)(6) excepts from discharge debts which result from the debtor's willful and malicious injury to an entity or property of another entity. The Plaintiff here has framed its Complaint under section 523(a)(6) and framed its Motion under both sections 523(a)(4) and (a)(6).

The focus of the Settlement and Confession is on the Debtor's breach of a duty of loyalty owed to the Plaintiff as his employer. While that is undoubtedly a fiduciary relationship, the question is whether it is the type of fiduciary relationship contemplated by section 523(a)(4).

Relatively recently, the Tenth Circuit has spoken on the nature of the fiduciary relationship required to sustain a claim under section 523(a)(4). *In re Young,* 91 F.3d 1367 (10th Cir.1996). The *Young* case involved an attorney who also was a real estate developer who represented a construction partnership. The attorney entered into a business arrangement with his client to perform construction services for his real estate projects and they then credited or deducted each other's account for legal or construction services respectively. Ultimately, the attorney owed the construction company more money than it owed him and he signed a promissory note to it for that balance. Years later, the construction company sought an accounting from the attorney and he would not provide it. A law suit followed and the parties settled for an amount in favor of the construction company of over $100,000. During the course of their dealings, the attorney never advised his client to obtain legal counsel to advise it in connection with their business dealings with each other. When the attorney filed bankruptcy to discharge his obligation to his client, the question arose whether the relationship between the parties was a fiduciary relationship within the meaning contemplated by section 523(a)(4).

■ The Tenth Circuit said no. "Under this circuit's federal bankruptcy case law, to find that a fiduciary relationship existed under § 523(a)(4), the court must find that the money or property on which the debt at issue was based was entrusted to the debtor. (Citations omitted)... Thus, an express or technical trust must be present for a fiduciary relationship to exist under § 523(a)(4)... Neither a general fiduciary duty of confidence, trust, loyalty, and good faith, nor inequality between the parties' knowledge or bargaining power is sufficient to establish a fiduciary relationship for purpose of

dischargeability. 'Further, the relationship must be shown to exist prior to the creation of the debt in controversy.' *In re Romero*, 535 F.2d 618, 621 (10th Cir. 1976); *In re Evans*, 161 B.R. 474, 477 (9th Cir. BAP 1993)." *In re Young*, 91 F.3d at 1371–1372.

The facts here speak in terms of the duty owed by the Debtor/employee to his employer, the Plaintiff. See Settlement Agreement page 3 at § 4.6 and page 4 at § 5; Confession pages 3, 6, 7, 9 and 10. Although that relationship was established well in advance of the debt which is at issue here, there was no *res* entrusted to the Debtor out of which the relationship and the debt arose. There is no express or technical trust as contemplated by *Young* and the cases cited by *Young*.[1] Thus, this Court concludes that the Plaintiff cannot prevail on a claim under section 523(a)(4).

Turning then to Plaintiff's alternative claim under section 523(a)(6), this Court must look to whether Debtor's misappropriation of Plaintiff's business opportunities as stipulated to was done willfully and maliciously. Recently, the Supreme Court addressed the scope of the "willful and malicious injury" exception to discharge. *Kawaauhau v. Geiger*, 523 U.S. 57, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998). The *Geiger* case involved a creditor's effort to discharge a medical malpractice award asserting that the doctor's conduct in intentionally rendering inadequate care, negligent or reckless conduct, amounted to willful and malicious injury. The Supreme Court framed the issue before it as follows:

> We confront this pivotal question concerning the scope of the "willful and malicious injury" exception: Does § 523(a)(6)'s compass cover acts, done intentionally, that cause injury (as the (creditor) urges), or only acts done with the actual intent to cause injury (as the Eighth Circuit ruled)? The words of the statute strongly support the Eighth Circuit's reading.

**1.** Plaintiff relies on *In re Stutsman*, 163 B.R. 374 (Bankr.N.D.Okl.1993) (Wilson, J.) for the proposition that misappropriation of a corporate business opportunity by an employee, when the business opportunity is sufficiently definite and ascertainable, constitutes fraud or defalcation while acting in a fiduciary capacity. *Stutsman* also involved a state court judgment against an employee but that employee was the president, director, chief operating officer and primary salesman of the employer. The bankruptcy court relied on the state court findings of fact to conclude that the debtor had usurped certain corporate opportunities for his own benefit while in those positions and that in those positions he occupied a fiduciary capacity under Oklahoma law to the plaintiff and that that fiduciary relationship existed before the debt was created. The court there reserved for trial the question of whether the corporate opportunity that was usurped was of sufficient value to amount to a trust *res* for purpose of section 523(a)(4). No new evidence was presented at trial and the bankruptcy judge acknowledged that the "fiduciary capacity in question ... [did] not fit comfortably within the traditional classification of trusts." *Id.* at 376 citing *In re Turner*, 134 B.R. 646, 650 (Bankr.N.D.Okl. 1991) (Wilson, J.) (Debtor construction contractor was in fiduciary relationship to materialmen pursuant to Oklahoma statute as to funds paid by the owner to the contractor for their benefit for materials supplied.). Again citing to *In re Turner*, the bankruptcy court concludes without analysis that "nevertheless, a corporate opportunity is a thing of value, sufficiently concrete and ascertainable to be comparable to 'money,' to constitute 'property,' and to be analogous and tantamount to a trust *res*, for purposes of exception to discharge under § 523(a)(4)."

This Court is not bound or persuaded by the analysis of *Stutsman* for a number of reasons. First, *Stutsman* predates *Young* so that court was without the benefit of its analysis. Secondly, the existence of the fiduciary relationship was founded on Oklahoma law, which is not applicable here. Third, while this Court might also conclude that a corporate opportunity is a thing of value, it is not so sanguine that under these circumstances it amounts to a trust *res* out of which a fiduciary relationship arises. Rather, in this and the *Stutsman* case, the "fiduciary relationship" arose first from the employer/employee relationship or the officer, director/company relationship, a general fiduciary relationship, not by the entrustment of a *res* as contemplated by the circuit in *Young*.

The word "willful" in (a)(6) modifies the word "injury," indicating that non-dischargeability takes a deliberate or intentional act that leads to injury. Had Congress meant to exempt debts resulting from unintentionally inflicted injuries, it might have described instead "willful acts that cause injury." Or, Congress might have selected an additional word or words, i.e. "reckless" or "negligent," to modify "injury." Moreover, as the Eighth Circuit observed, the (a)(6) formulation triggers in the lawyer's mind the category of "intentional torts," as distinguished from negligent or reckless torts. Intentional torts generally require that the actor intend "the consequences of an act," not simply "the act itself" Restatement (Second) of Torts § 8A, comment a, p. 15 (1964) (emphasis added).

*Kawaauhau v. Geiger*, 118 S.Ct. at 977. The *Geiger* Court ultimately held that debts from recklessly or negligently inflicted injuries do not fall within the compass of § 523(a)(6).

The Tenth Circuit authority which addressed the "willful and malicious" exception predates the *Geiger* decision. *In re Pasek*, 983 F.2d 1524 (10th Cir.1993); *In re Posta*, 866 F.2d 364 (10th Cir.1989); *In re Compos*, 768 F.2d 1155 (10th Cir.1985). Those cases evolved in their treatment of "willful" as one of the two distinct elements which had to be proved to establish a 523(a)(6) claim. See *In re Longley*, 235 B.R. 651 (10th Cir. BAP 1999). In *Longley*, a post-*Geiger* decision, the BAP discussed these three circuit decisions in some detail. *In re Longley*, 235 B.R. at 655–656. Because such an analysis is instructive here, this Court will do the same.

In *Compos*, the court held that the reckless injury caused by a drunk driver was not "willful" because the driver did not intend to injure. " 'Willful' modifies 'injury'. Section 523(a)(6) does not except from discharge intentional acts which cause injury; it requires instead an intentional or deliberate injury." *In re Compos*, 768 F.2d at 1158. Reckless disregard was not enough.

Four years later, the Circuit was called upon again to rule on whether certain conduct fell within the "willful and malicious" elements of 523(a)(6), this time in the context of a conversion of collateral. *In re Posta*, 866 F.2d 364 (10th Cir.1989). In *Posta*, the Circuit backed away from *Compos* and held:

> The "willful" element is straightforward. It simply addresses whether the debtor intentionally performed the basic act complained of. *In re Egan*, 52 B.R. 501, 506 (Bankr.D.Minn.1985). "Willful" conduct is conduct that is volitional and deliberate and over which the debtor exercises meaningful control, as opposed to unintentional or accidental conduct. *In re Clayburn*, 67 B.R. 522, 525 (Bankr. N.D.Ohio 1986); *In re Nelson*, 67 B.R. 491, 497 (Bankr.D.Minn.1985). Thus, acts caused by the debtor's negligence or recklessness are not encompassed by this exception. *In re Compos*, 768 F.2d at 1158; *In re Egan*, 52 B.R. at 506.

*In re Posta*, 866 F.2d at 367. Instead, the Circuit concentrated on the "malicious" element and how malice is demonstrated:

> [T]he focus of the "malicious" inquiry is on the debtor's actual knowledge or the reasonable foreseeability that his conduct will result in injury to the creditor, "not on abstract and perhaps moralistic notions of the 'wrongfulness' of the debtor's act." *In re Egan*, 52 B.R. at 507 n. 4. . . .
>
> Under § 523(a)(6), the debtor's malicious intent can be shown in two ways. In the rare instances in which there is direct evidence that the debtor's conduct was taken with the specific intent to harm the creditor, the malice requirement is easily established. See, e.g., *In re Boren*, 47 B.R. 293 (Bankr.W.D.Ky. 1985); *In re Major*, 44 B.R. 636 (Bankr. W.D.Mo.1984). More commonly, however, malicious intent must be demonstrated by evidence that the debtor had knowledge of the creditor's rights and

880

that, with that knowledge, proceeded to take action in violation of those rights. *In re Nelson,* 67 B.R. at 497; *In re Dever,* 49 B.R. 329, 332 (Bankr.W.D.Ky. 1984). Such knowledge can be inferred from the debtor's experience in the business, his concealment of the sale, or by his admission that he has read and understood the security agreement.

*In re Posta,* 866 F.2d at 367.

Another four years elapsed and the Circuit issued its final pre-*Geiger* "willful and malicious" pronouncement. *In re Pasek,* 983 F.2d 1524 (10th Cir.1993). Pasek involved an accountant who left an accounting firm and set up practice with some of the clients of his old firm in violation of a covenant not to compete. The Circuit was persuaded by the facts of this case which were key to the findings of the lower courts, particularly that the debtor accountant had two of five children with significant medical problems and the accounting firm had imposed standards concerning private family matters and insisted on unreasonable billing quotas thereby altering their original employment agreement. The rule of law established by *Pasek* included a new twist:

> "[W]illful and malicious injury" occurs when the debtor, *without justification or excuse,* and with full knowledge of the specific consequences of his conduct, acts notwithstanding, knowing full well that his conduct will cause particularized injury. Such a standard is consistent with our rule that § 523(a)(6) requires not only intentional conduct on the part of the debtor, but also intentional or deliberate injury.

*In re Pasek,* 983 F.2d at 1527 (emphasis added).

As noted, since *Geiger,* the Bankruptcy Appellate Panel for the Tenth Circuit has had occasion to address the "willful and malicious" exception. *In re Longley,* 235 B.R. 651 (10th Cir. BAP 1999). *Longley,* another conversion of collateral case, involved a drug deal that went sour and the debtor was forced under threat of bodily injury to turnover his vehicle to his former "partner in crime." When the car disappeared and the debtor filed bankruptcy, the holder of a lien against the vehicle sought to have the debt excepted from discharge under 523(a)(6).

The *Longley* court analyzed *Pasek, Posta* and *Compos* and discussed the evolution in the Tenth Circuit's approach to the "willful and malicious" elements and how those cases are impacted by *Geiger. In re Longley,* 235 B.R. at 655–656. The *Longley* court observed that *Geiger* overrules *Posta's* holding that "willful" requires only an intentional or deliberate act, *In re Longley,* 235 B.R. at 656, but that *Geiger* offers little guidance as to the evidence needed to establish intent to injure. *Id.* at 657. In addition, in a footnote, *Longley* noted the split among cases post-*Geiger* "as to whether 'willful and malicious' is a single standard requiring proof of an intentional injury or whether 'willful' requires an intentional injury and 'malicious' requires that the injurious act be done 'without justification or excuse.'" *In re Longley,* 235 B.R. at 656 n. 5. *Longley* did not resolve that debate because it did not have to. *Id.* It ultimately rejected the claim of the lien holder finding that there was no evidence to establish that the debtor intended to harm the lien holder. Rather, the stronger evidence was of the debtor's intent to avoid the physical harm that was threatened. *Id.* at 658.

■ In this case, this Court does not have to confront that lingering debate either. The facts admitted to by the Debtor establish that he misappropriated business opportunities for his benefit to the detriment of his employer, effectively a conversion. What must now be determined by this Court, is whether it was done with intent to injure the Plaintiff.

The courts in *Posta* and *Longley* grappled with how malice/intent is demonstrated in conversion cases. The *Posta* court noted that the instance of direct evidence of intent is rare and that, more commonly,

intent must be established by indirect or circumstantial evidence that the debtor knew of the creditor's rights and acted in disregard of them. *In re Posta,* 866 F.2d at 367; *In re Longley,* 235 B.R. at 657.

In *Hansen,* cited above, the debtor confessed judgment in state court to a complaint charging him with fraudulent misrepresentation and fraudulent inducement. When the debtor filed bankruptcy, the question became whether debtor was collaterally estopped by his confession so as to establish claims for fraud and willful and malicious injury under section 523. Debtor argued that there were no specific findings of fraud. Judge Kane's disposition of the debtor's argument is instructive here:

> Debtor's desire for specific findings from the trial court is misplaced. At best, the trial court is a third party which resolves the issues before it. In this case, the party himself made a statement about what actually happened. He confessed judgment to a complaint charging him with fraud and willful misrepresentation. Since the gravamen of these acts is intentional conduct, there is no better evidence of intent than the admission of the perpetrator. Specific findings could add nothing to what is already before the bankruptcy court.

*In re Hansen,* 131 B.R. 167, 171 (D.Colo. 1991).

 What is now before this Court is not so much a question of collateral estoppel but whether there is evidence of intent. Unlike the courts in *Posta* and *Longley,* this Court does not have to resort to indirect evidence of intent. What this Court has before it, as did the *Hansen* court, is direct evidence of the Debtor's intent. In the Stipulation and Confession, Debtor admitted that his conduct was motivated by an intent to injure the Plaintiff. The Debtor agreed in the Settlement:

> (Debtor) agrees that the payments to be made to Solar Systems pursuant to Section 4.1 of this Agreement *constitute a debt arising from injuries intentional-*
> *ly inflicted on the entity or property of Solar Systems,* as set forth in Section 5 below, and agree that said debt is excepted from discharge under the United States Bankruptcy Code. (Debtor) *further agrees that said payments are compensation to Solar Systems for (his) "willful and malicious injury" (as that term is defined in 11 U.S.C. Section 523(6) of the Bankruptcy Code) to Solar Systems as an entity and/or to its property, proximately caused by the breach of his duty of loyalty owed to Solar Systems,* as further set forth in section 5 below, and more fully described in the Confession of Judgment and Stipulation and Judgment attached as Exhibit C hereto. (Debtor) further agrees that he will not seek a discharge under the United States Bankruptcy Code of his debt obligation to Solar Systems arising under this Settlement Agreement .... Settlement, Section 4.6. (Emphasis added).

The Confession at ¶ 8 recites: ... "(Debtor) intended and knew that the appropriation of these business opportunities and expectancies would and did cause economic harm to Solar Systems." At ¶ 12 of the Confession, Debtor further acknowledges that his conduct was without just cause or excuse. This Court needs no more. Plaintiff is entitled to summary judgment in its favor. The Plaintiff has established that its judgment obtained in the Superior Court of the State of Washington for King County (Cause No. 95–2–22684) is nondischargeable pursuant to 11 U.S.C. § 523(a)(6) and a declaratory judgment to that effect shall enter in its favor.

 Debtor also endeavored to defend against the Plaintiff's claims by arguing that the judgment had been satisfied from various sources. Even if true, such an argument is not a defense in this action. A judgment was rendered in the State Court Action and the sole function of this Court is to determine and declare whether that State Court Judgment is excepted from the discharge. Debtor's defense should be

raised in the state court and not before this Court. Accordingly, Debtor's satisfaction argument is rejected.