FILED
U.S. Bankruptcy Appellate Panel
of the Tenth Circuit

November 8, 2022

Blaine F. Bates
Clerk

NOT FOR PUBLICATION[1]

# UNITED STATES BANKRUPTCY APPELLATE PANEL

# OF THE TENTH CIRCUIT

_____

| | |
|---|---|
| IN RE BENJAMIN RODNEY HULSE,<br><br>Debtor.<br><br>_____<br><br>SWAN PEDIATRIC DENTAL, LLC and MATTHEW SWAN,<br><br>Plaintiffs - Appellees,<br><br>v.<br><br>BENJAMIN RODNEY HULSE,<br><br>Defendant - Appellant. | BAP No. UT-22-001<br><br><br>Bankr. No. 21-20084<br>Adv. No. 21-02038<br>Chapter 7<br><br><br>OPINION |

_____

Appeal from the United States Bankruptcy Court
For the District of Utah

_____

Before **SOMERS**, **LOYD**, and **PARKER**, Bankruptcy Judges.

_____

**SOMERS**, Bankruptcy Judge.

_____

_____

[1]This unpublished opinion may be cited for its persuasive value, but is not precedential, except under the doctrines of law of the case, claim preclusion, and issue preclusion. 10th Cir. BAP L.R. 8026-6.

An arbitrator concluded Dr. Benjamin Hulse not only breached a contract with Dr. Matthew Swan, but also defamed him, awarding $345,000 in damages "for breach of contract and defamation," plus attorneys' fees and costs of $310,739.[2] After Dr. Hulse filed a chapter 7 bankruptcy petition, Dr. Swan filed a nondischargeability action against Dr. Hulse, alleging, as pertinent here, willful and malicious intentional monetary injury under 11 U.S.C. § 523(a)(6) because of the defamation.[3] There is no doubt Dr. Swan has a valid prepetition debt against Dr. Hulse based, at least in part, on defamation. But because this Panel concludes the Bankruptcy Court granted summary judgment on disputed facts and short-circuited the determination of whether the debt—and what portion of it—stems from willful and malicious injury within the meaning of § 523(a)(6), we reverse the Bankruptcy Court's judgment of nondischargeability for Dr. Swan.

## I.     Background

On December 19, 2018, Dr. Hulse executed an Asset Purchase Agreement with Dr. Swan, wherein Dr. Hulse agreed to sell his dental practice assets to Dr. Swan, effective December 31, 2018, for $1,435,000, of which $1,076,200 was for the goodwill of two dental offices. Dr. Swan did not purchase Dr. Hulse's accounts receivable, but there were multiple terms within the Asset Purchase Agreement concerning collection

---

[2] *Final Award* at 2-3, *in* Appellant's App. at 22-23. The arbitration award was entered against Hulse Dentistry, LLC and now-Defendant/Appellant Dr. Hulse and in favor of now-Plaintiffs/Appellees Dr. Swan and Swan Pediatric Dental, LLC. For ease of discussion, herein we will refer to Debtor/Defendant/Appellant as Dr. Hulse, and to Plaintiffs/Appellees as Dr. Swan.

[3] All future references to "Code," "Chapter," "Section," and "§" are to the Bankruptcy Code, Title 11 of the United States Code, unless otherwise indicated.

and remittance of the payments on the accounts receivable. The Asset Purchase Agreement also contained an arbitration provision.

In January 2019, the parties worked together to permit Dr. Hulse to remove certain personal items from the dental practice. Collection efforts began on the outstanding accounts receivable. Mid-way through 2019, the parties' relationship soured. Dr. Swan claims he learned Dr. Hulse failed to collect on certain accounts for many months prior to the sale of the dental practices, failed to account for certain payments on other accounts, and failed to keep accurate patient records. Dr. Swan also alleges Dr. Hulse fraudulently altered certain accounts in May 2019, when he was given access to the records, to increase the amount due him. Further, Dr. Swan contends Dr. Hulse violated the Asset Purchase Agreement when he sent collection letters to certain patients in July 2019 yet failed to indicate that Dr. Hulse was acting on his own behalf and not Dr. Swan's. Dr. Hulse disputes these allegations and makes his own allegations of fraud against Dr. Swan.

On August 29, 2019, Dr. Hulse filed a state court complaint against Dr. Swan. Dr. Swan then filed a demand for arbitration, and on October 18, 2019, the state court case was stayed and the parties were ordered to arbitration.

In October 2019, Dr. Swan discovered certain explicit images of Dr. Hulse's fiancée on the dental practice computers. By that point, Dr. Swan had also learned that Dr. Hulse was being investigated for improper sexual touching at the dental offices, which caused allegations of a hostile work environment. Dr. Swan told Dr. Hulse he was concerned about the goodwill of the practice he purchased, noting the photos and

allegations. In November 2019, Dr. Hulse made a post to his Facebook account that he

said was for "friends only." In the Facebook post, among other things, Dr. Hulse accused

Dr. Swan of being "incredibly dishonest," "hiding money," "illegal actions,"

"blackmail," and "lacking in integrity."[4] The private versus public nature of the post is

debated.[5] Unsurprisingly, this November 2019 social media post did nothing to ease the

parties' disputes.[6]

---

[4] *Motion for Summary Judgment on Count 1 of Complaint to Determine Dischargeability of Debt* at *Exhibit 2*, *in* Appellant's App. at 199. The full text of the post is as follows:

> Friends only, so not breaking any rules, but I'll still be vague. I've had to sue somebody – crazy to me since its [sic] not my personality and never thought I'd be here or be in a lawsuit ever. But the doctor that bought the practices I sold at the end of last year is so incredibly dishonest I have to say something. From his hiding money, outright illegal actions, and, recently, personal blackmail, I was pretty much forced into this. I've never met somebody entirely lacking in integrity while I've been in business and it's depressing. To those that have been affected by this, from the business and accounting, I am so very sorry. If you know somebody with this complaint you can explain, since legal restraints make it hard for me to do anything (this experience is a learning process about the legal system for sure). This is a way of trying to get people out of this and make him cover and answer for things he has done.

[5] In testimony at the arbitration hearing, Dr. Hulse referred to the post as "a private Facebook post to my friends." *Arbitration Day 2 Transcript of July 09, 2020* at 391, *in* Appellant's App. at 95. In Dr. Swan's nondischargeability complaint, *Complaint* at 6, *in* Appellee's App. at 214, and in his motion for summary judgment in the Bankruptcy Court, *Motion for Summary Judgment on Count 1 of Complaint to Determine Dischargeability of Debt* at 1, *in* Appellant's App. at 131, Dr. Swan referred to the post as a "public post to [Dr. Hulse's] Facebook page." In Dr. Hulse's motion for summary judgment in the Bankruptcy Court, Dr. Hulse referred to the post as follows: "Dr. Hulse posted to his friends and family (not publicly, though he wishes he had), his frustration." *Motion for Summary Judgement to Discharge Debt* at 2, *in* Appellant's App. at 37. Dr. Hulse used this same language in his opposition to Dr. Swan's motion for summary judgment. *Memorandum Opposing Motion* at 3, *in* Appellant's App. at 303.

[6] The parties apparently argued about the need for Dr. Swan to retain the photos as evidence for some months afterward. Ultimately, in April 2020, Dr. Hulse's fiancée filed

The hearing in the arbitration case was held in July 2020 and proceeded on dueling claims for breaches of the Asset Purchase Agreement and a claim of defamation brought by Dr. Swan against Dr. Hulse apparently only based on the Facebook post. On the second day of testimony, Dr. Hulse referred to his November 2019 Facebook post and stated:

> At this point, my level of frustration, yes, was a private Facebook post to my friends. And he's concerned about how it might be viewed, but I have to make this commentary. I had gone through, up to this point, a person who had hidden money, a person who had written off debt he wasn't supposed to, a person who had avoided obeying the contract in giving me ability to collect on things, a person who I found had just modified accounts in an illegal fashion. None of that angered me enough to make a Facebook post.
>
> But when you go after somebody's private family, their children or their wife, that is different. There's not too much [sic] things in this world that can make me angry. I'm a pretty calm person. But this was past anything that made sense to me.
>
> And, in truth, I'm almost embarrassed at how little I responded to it because I really wanted to go up and punch him. I didn't. Here I am, in court. We're in court. But it's beyond the pale.[7]

On August 27, 2020, the arbitrator entered his Final Award.[8] Therein, the arbitrator: (1) awarded Dr. Swan $345,000 against Dr. Hulse "for breach of contract and

---

a motion in the state court for a protective order concerning the photographs. That same month, the parties entered a Stipulated Protective Order, requiring destruction of the images, *Stipulated Protective Order*, *in* Appellant's App. at 60-65, and the state court entered an Order granting the request for the Stipulated Protective Order, *Order Granting Stipulated Motion to Intervene and Request for Protective Order*, *in* Appellant's App. at 84-85. In that Order, the state court noted the stipulated relief was granted "for good cause showing." *Id.* at 84.

[7] *Arbitration Day 2 Transcript of July 09, 2020* at 391-92, *in* Appellant's App. at 95-96.

[8] *Final Award*, *in* Appellant's App. at 21-28.

5

defamation,"[9] (2) required Dr. Hulse to bear the costs of the arbitrator's fees and administrative fees,[10] and (3) awarded $310,739 in attorneys' fees and costs to Dr. Swan. In addition, the arbitrator granted a permanent injunction against Dr. Hulse, ordering him "to refrain from publishing false and defamatory statements" about Dr. Swan or his dental practice.[11]

Regarding Dr. Swan's breach of contract claim against Dr. Hulse, the arbitrator concluded the collection letters Dr. Hulse sent in July 2019 were "misleading," "erroneous," and breached the Asset Purchase Agreement.[12] The arbitrator concluded this breach damaged the goodwill of Dr. Swan's dental practice, with damages totaling $345,000, as demonstrated by expert evidence Dr. Swan offered.

Then regarding Dr. Swan's defamation claim against Dr. Hulse, the arbitrator stated Dr. Hulse "published false and defamatory statements" about Dr. Swan.[13] The arbitrator continued: "This also damaged the reputation and thus the goodwill of the Swan parties. Such damage appears sufficiently compensated by the $345,000 award so

---

[9] *Id.* at 3, *in* Appellant's App. at 22. Both Mr. Hulse and his entity Hulse Dentistry, LLC were parties to the arbitration, and the award was entered against them "jointly and severally." *Id.*

[10] The Final Award states that arbitration fees were awarded under section 29B of the Asset Purchase Agreement, which permitted monetary and non-monetary relief to be awarded by the arbitrator. *Asset Purchase Agreement* at 16, *in* Appellant's App. at 163.

[11]  *Final Award* at 3, *in* Appellant's App. at 23.

[12] *Id.*

[13] *Id.* at 4, *in* Appellant's App at 24.

no additional separate award of damage is awarded."[14] The arbitrator then issued the injunction against further false and defamatory statements.[15]

Regarding the breach of warranty claim brought by Dr. Swan against Dr. Hulse, the arbitrator concluded no damages for that claim were shown and denied the claim. Pertinent here, however, while discussing the claim, the arbitrator concluded that when Dr. Swan communicated to Dr. Hulse that he wanted to avoid the matter of the explicit photographs in the parties' dispute, it "was unreasonably interpreted by [Dr. Hulse] as a blackmail threat which led to a defamatory publication by [Dr. Hulse] using the term 'blackmail.'"[16]

Finally, the arbitrator concluded: (1) Dr. Hulse breached the arbitration provision of the Asset Purchase Agreement, but found the damages for that breach had already been compensated in the award of fees and costs,[17] and (2) Dr. Hulse's counterclaims were without merit.[18] Regarding the award of fees and costs for Dr. Swan, the arbitrator noted the $310,739 award included "all fees and costs incurred by [Dr. Swan], including in the initial lawsuit, in mediation, and in arbitration because this is necessary to provide full relief" to Dr. Swan.[19] In support, the arbitrator cited sections 17 and 29D of the

---

[14] *Id.*

[15] *Id.*

[16] *Id.*

[17] *Id.*

[18] *Id.* at 4-6, *in* Appellant's App. at 24-26.

[19] *Id.* at 7, *in* Appellant's App. at 27.

parties' Asset Purchase Agreement, which allowed fees and costs for enforcement of rights under the Agreement, to be awarded by the arbitrator.[20]

Dr. Swan filed a motion to confirm the arbitrator's Final Award in state court, while Dr. Hulse filed a motion to vacate the Final Award. On December 23, 2020, the state court affirmed the Final Award.[21] Judgment was entered for Dr. Swan for $673,369, and a permanent injunction entered enjoining Dr. Hulse from "publishing false and defamatory statements about Dr. Swan."[22]

On January 8, 2021, Dr. Hulse filed a chapter 7 bankruptcy petition.[23] Dr. Swan filed a proof of claim for $673,369, stemming from the Final Award,[24] and initiated his nondischargeability complaint. The complaint stated two counts: one under § 523(a)(4) ("fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny") and one under § 523(a)(6) ("willful and malicious injury by the debtor to another entity or to the property of another entity"). The complaint discussed Dr. Swan's allegations, and the arbitrator's findings, concerning (1) the May 2019 alteration of patient records by Dr. Hulse, (2) the July 2019 collection letters sent by Dr. Hulse, and (3) the November 2019 Facebook post by Dr. Hulse. Dr. Swan also alleged Dr. Hulse had (4) contacted multiple third parties ("insurance companies, banks, and police") making false

---

[20] *Asset Purchase Agreement* at 12, 17, *in* Appellant's App. at 159, 164.

[21] *Order Re: December 7, 2020 Hearing*, *in* Appellant's App. at 30-32.

[22] *Judgment* at 2, *in* Appellant's App. at 217.

[23] *Voluntary Petition*, *in* Appellee's App. at 5-11.

[24] *Proof of Claim*, *in* Appellee's App. 12-14.

accusations about Dr. Swan and had repeatedly threatened to report Dr. Swan to professional licensing boards.[25] Dr. Swan alleged these four actions caused willful and malicious "intentional monetary injury" supporting the § 523(a)(6) count.[26]

On October 19, 2021, Dr. Swan filed a motion for summary judgment, seeking judgment only on Count 1 of the complaint, for willful and malicious injury based on defamation under § 523(a)(6). The motion noted the arbitrator found the "November 2019 Facebook post included defamatory statements about [Dr. Swan] . . . [that] damaged the reputation and thus the goodwill of [Dr. Swan]" and that the damages of $673,369 were "based, *in part*, on [Dr. Hulse's] defamation."[27] Dr. Swan argued that Dr. Hulse's testimony that he made the November 2019 Facebook post because he was "angry," and surrounding evidence of the May 2019 changing of patient records, the July 2019 misleading letters sent to Dr. Swan's patients, and the postpetition actions in July 2021 allegedly in violation of the permanent injunction, all supported a finding of willful and malicious injury. Dr. Swan argued Dr. Hulse's behavior was not justified based on the arbitrator's conclusion that Dr. Hulse unreasonably interpreted Dr. Swan's behavior regarding the explicit photographs as a blackmail threat.[28] Dr. Swan's motion for summary judgment also sought an order from the Bankruptcy Court that the permanent

---

[25] *Complaint* at 8, *in* Appellee's App. at 216.

[26] *Id.* at 9, *in* Appellee's App. at 217.

[27] *Motion for Summary Judgment on Count 1 of Complaint to Determine Dischargeability of Debt* at 7, *in* Appellant's App. at 134 (emphasis added).

[28] *Id.* at 8, *in* Appellant's App. at 135.

injunction entered by the arbitrator and confirmed by the state court was

nondischargeable.

On October 28, 2021, Dr. Hulse filed his own motion for summary judgment. That

motion generally argued that Dr. Hulse's feelings expressed at the arbitration hearing

were justified, his beliefs regarding blackmail were reasonable, and the adversary

proceeding against him should be dismissed and the debt at issue discharged.[29] In his

opposition to Dr. Hulse's motion, Dr. Swan argued the *Rooker-Feldman* doctrine

prohibited relitigating the facts found in the arbitration proceeding, and argued it was

"undisputed that the damages awarded to [Dr. Swan] resulted from [Dr. Hulse's]

defamation."[30] Dr. Hulse replied, challenging Dr. Swan's assertions and arguing the facts

the arbitrator found did not rise to the level of willful and malicious injury, and the

damages awarded by the arbitrator were not based on the defamation finding. [31]

In an oral ruling, the Bankruptcy Court found no "genuine disputes of material

fact"[32] and granted Dr. Swan's motion for summary judgment. The Bankruptcy Court

also: (1) denied Dr. Hulse's motion for summary judgment wherein he sought dismissal

---

[29] *Motion for Summary Judgement* [sic] *to Discharge Debt*, *in* Appellant's App. 36-40.
Dr. Hulse opposed Dr. Swan's motion for summary judgment, making the same
arguments in his opposition as he did in his own motion. *Memorandum Opposing
Motion*, *in* Appellant's App. at 301-05.

[30] *Memorandum Opposing Motion for Summary Judgment* at 3, *in* Appellant's App. at
362.

[31] *Reply Memorandum*, *in* Appellant's App. at 488-92.

[32] *Transcript* at 12, *in* Appellee's App. at 265.

of all counts and a conclusion that the debt was dischargeable, and (2) concluded the injunction entered by the state court was not dischargeable, but should be enforced by the state court rather than the bankruptcy court. On December 24, 2021, the Bankruptcy Court then entered its *Order on Motion for Summary Judgment on Count 1 of Complaint and Denying Cross Motion of Debtor for Summary Judgment* (the "Summary Judgment Order").[33] Only Dr. Hulse filed a notice of appeal, and he appeals only that portion of the Summary Judgment Order concluding the entirety of his debt to Dr. Swan is nondischargeable under § 523(a)(6).[34]

## II.     Jurisdiction and Standard of Review

"With the consent of the parties, this Court has jurisdiction to hear timely-filed appeals from 'final judgments, orders, and decrees' of bankruptcy courts within the Tenth Circuit"[35] and from interlocutory orders with BAP leave.[36] Dr. Hulse timely filed his notice of appeal, and the BAP granted Dr. Hulse leave to appeal.[37] No party elected for

---

[33] Appellant's App. at 17-18.

[34] As a result, this Court states no opinion on the other matters in the adversary proceeding, *i.e.*, Dr. Swan's claim brought under § 523(a)(4), the state court injunction against Dr. Hulse, or the Bankruptcy Court's Order denying Dr. Hulse's motion for summary judgment.

[35] *Straight v. Wyo. Dep't of Transp. (In re Straight)*, 248 B.R. 403, 409 (10th Cir. BAP 2000) (quoting 28 U.S.C. § 158(a)(1)); 28 U.S.C. § 158(a)(1), (a)(3), (b)(1), and (c)(1); Fed. R. Bankr. P. 8003, 8005.

[36] 28 U.S.C. § 158(a)(3) (authorizing jurisdiction to hear appeals from interlocutory orders "with leave of the court").

[37] *Order Allowing Appeal to Proceed*, BAP Appeal No. 22-1, Docket No. 13 (10th Cir. BAP Feb. 9, 2022).

this appeal to be heard by the United States District Court pursuant to 28 U.S.C. § 158(c). Accordingly, this Court has jurisdiction over this appeal.

The ultimate determination of whether a debt is nondischargeable pursuant to § 523 is a legal question reviewed de novo.[38] Determinations about the sufficiency of the evidence at the Bankruptcy Court, or determinations of intent, are generally findings reviewed under a clear error standard.[39] In this matter, however, the Bankruptcy Court found there were no material fact issues and Dr. Swan prevailed on his § 523(a)(6) claim as a matter of law. As a result, review of the Summary Judgment Order will be de novo.[40]

---

[38] *United States v. Victor*, 121 F.3d 1383, 1386 (10th Cir. 1997) (citing *In re Grynberg*, 986 F.2d 367, 369 (10th Cir. 1993)) (interpreting § 523(a)(1)(A)).

[39] *DSC Nat'l Props., LLC v. Johnson (In re Johnson)*, 477 B.R. 156, 168 (10th Cir. BAP 2012) ("The bankruptcy court's factual findings of fact, including findings regarding intent, are reviewed for 'clear error.'"). Under the clear error standard, this Court defers to facts found by the Bankruptcy Court, unless those factual findings are "without factual support in the record" or, "after examining all the evidence, we are left with a 'definite and firm conviction that a mistake has been made.'" *Id.* (quoting *Cobra Well Testers, LLC v. Carlson (In re Carlson)*, No. 06-8158, 2008 WL 8677441, at *2 (10th Cir. Jan. 23, 2008) (unpublished)).

[40] *Mayotte v. U.S. Bank Nat'l Ass'n as Tr. for Structured Asset Inv. Loan Tr. Mortg. Pass-Through Certificates, Series 2006-4*, 985 F.3d 1248, 1250 (10th Cir. 2021) ("Under federal law, we conduct de novo review of the award of summary judgment."); *In re Expert S. Tulsa, LLC*, 522 B.R. 634, 643 (10th Cir. BAP 2014), *aff'd*, 619 F. App'x 779 (10th Cir. 2015) (order granting summary judgment reviewed de novo, applying "the same legal standard as was used by the bankruptcy court to determine whether either party is entitled to judgment as a matter of law").

### III.    Analysis

### A.    Issues on Appeal

Dr. Hulse proceeds pro se, and his briefing reflects that status.[41] There is no doubt that at the Bankruptcy Court and on appeal, Dr. Hulse's main argument is that he was justified in making his November 2019 Facebook post because of his belief that Dr. Swan blackmailed him with the explicit photographs found at the dental office. That said, "[a] pro se litigant's pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers."[42] And while this Court "will not construct arguments or theories for the plaintiff in the absence of any discussion of those issues,"[43] Dr. Hulse recognized and raised the same problems in this case that ultimately lead this Panel to reverse the Summary Judgment Order.

At the Bankruptcy Court, Dr. Hulse's motion for summary judgment and his opposition to Dr. Swan's motion focused on his purported justification and the asserted reasonableness of his actions.[44] But then in his reply brief supporting his motion for

---

[41] For example, Dr. Hulse argues that because the state court's agreed protective order recites that it was being entered "for good cause," the state court must have concluded that Dr. Swan acted nefariously regarding the explicit photographs and Dr. Hulse was therefore justified in making his November 2019 Facebook post. The "good cause" language appears instead to be a rote recital reflecting that the parties agreed to the relief contained in the order.

[42] *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

[43] *Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991).

[44] *Motion for Summary Judgement to Discharge Debt*, *in* Appellant's App. at 36-40; *Memorandum Opposing Motion*, *in* Appellant's App. at 301-05.

13

summary judgment, Dr. Hulse argued the facts found by the arbitrator did not rise to the level of willful and malicious injury, and argued the damages awarded by the arbitrator were not based on the defamation finding, raising both issues discussed by this Court below.[45] At the hearing on the pending motions for summary judgment, Dr. Hulse also argued both the issue of willful and malicious intent and the issue of damages.[46]

On appeal, Dr. Hulse argues the Bankruptcy Court erred in concluding his actions constituted willful and malicious conduct[47] and argues the Bankruptcy Court erred when it "assigned 'malicious and willful' intent to Dr. Hulse's feelings."[48] As a result, read liberally, Dr. Hulse raises the factual basis for the § 523(a)(6) claim on appeal. Dr. Hulse did not, however, explicitly raise the damages issue in his appellate briefing. Because Dr. Hulse without a doubt raised the issue of damages at the Bankruptcy Court, and because

---

[45] *Reply Memorandum*, *in* Appellant's App. at 488-92.

[46] Dr. Hulse did not include the transcript from the hearing on the motion for summary judgment in his appendix. He did, however, designate the "[c]ontent of Hearing with Judge William T Thurman, Dec. 9, 2021 and subsequent ruling, Dec. 10, 2021" in his Designation of Record. Dr. Hulse also designated the documents filed at the Bankruptcy Court, and the audio recording is available on the Bankruptcy Court docket. We take judicial notice of the bankruptcy docket. *See United States v. Ahidley*, 486 F.3d 1184, 1192 n.5 (10th Cir. 2007) (courts have "discretion to take judicial notice of publicly-filed records in [their own] court and certain other courts concerning matters that bear directly upon the disposition of the case at hand"); *In re Schupbach*, 607 F. App'x 831, 838 (10th Cir. May 19, 2015) (unpublished) (holding the appellate court may take judicial notice of the underlying bankruptcy docket).

[47] *Statement of Issues to be Presented*, Doc. 60, Adv. No. 21-02038 (Bankr. D. Utah Feb. 23, 2022) (arguing the Bankruptcy Court erred in deeming Dr. Hulse's "emotions, with no accompanying actions" as willful and malicious).

[48] Appellant Br. 9.

14

we find damages to be an additional dispositive issue of law on appeal, we also address it here.[49]

### B.     Standards of Law Governing § 523(a)(6) and Summary Judgment

Section 523(a)(6) excepts from discharge any debt "for willful and malicious injury by the debtor to another entity or to the property of another entity."[50] Section 523 exceptions to discharge "are narrowly construed, and because of the fresh start objectives of bankruptcy, doubt as to the meaning and breadth of a statutory exception is to be resolved in the debtor's favor."[51] A creditor bears the burden of proving nondischargeability under § 523(a) by a preponderance of the evidence.[52]

When considering a motion for summary judgment, the trial court views the record in the light most favorable to the non-moving party, but the court does not weigh the evidence or make credibility determinations.[53] In general, questions involving a

---

[49] *Counts v. Kissack Water and Oil Serv., Inc.*, 986 F.2d 1322, 1325–26 (10th Cir. 1993) ("Although it is rarely done, an appellate court may, sua sponte, raise a dispositive issue of law when the proper resolution is beyond doubt and the failure to address the issue would result in a miscarriage of justice."); s*ee also Sorbo v. United Parcel Serv.*, 432 F.3d 1169, 1179 n.8 (10th Cir. 2005) ("[P]laintiff (now pro se) . . . has not specifically identified the particular legal errors we recognize here. To the extent that he could be deemed to have waived these errors, it nevertheless remains within our discretionary power to correct them.").

[50] 11 U.S.C. § 523(a)(6).

[51] *DSC Nat'l Props., LLC v. Johnson (In re Johnson)*, 477 B.R. 156, 168 (10th Cir. BAP 2012) (internal alterations and quotations omitted).

[52] *Grogan v. Garner*, 498 U.S. 279, 290-91 (1991).

[53] *Telos Ventures Grp., PLLC v. Short (In re Short)*, No. AP 20-02027, 2021 WL 852058, at *8 (Bankr. D. Utah Mar. 4, 2021).

defendant's intent or state of mind are not susceptible to summary judgment.[54]

Nevertheless, § 523(a)(6) actions may be susceptible to summary judgment when the

facts and circumstances surrounding a debtor's actions leave *no room* for a trier of fact to

conclude that the debtor acted, or as the case may be, did not act, willfully and

maliciously.[55]

There are two issues on appeal. First, whether the Bankruptcy Court erred in

granting summary judgment on the § 523(a)(6) willful and malicious injury claim based

on the Final Award. Second, whether the Bankruptcy Court erred in awarding the full

amount of the Final Award on the willful and malicious injury claim.

### C.    Willful and Malicious Injury

Proof of a willful and malicious injury under § 523(a)(6) requires proof of two

distinct elements—the injury must be both "willful" and "malicious."[56]

"For an injury to be 'willful,' there must be a deliberate or intentional *injury*, not

merely 'a deliberate or intentional *act* that leads to injury.'"[57] "[T]he (a)(6) formulation

---

[54] *See Home Nat'l Bank v. Waite (In re Waite)*, No. 07-41701, 2009 WL 1941301, at *4 (Bankr. D. Kan. July 2, 2009) ("Questions of an individual's mental state and whether they acted willfully and maliciously are seldom appropriate issues for summary judgment.").

[55] *Id.* Stated differently, summary judgment is appropriate when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, [so] there is 'no genuine issue for trial.'" *Matsushita Elec. Indust. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)).

[56] *First Am. Title Ins. Co. v. Smith (In re Smith)*, 618 B.R. 901, 912 (10th Cir. BAP 2020).

[57] *Id.* (emphasis added) (quoting *Kawaauhau v. Geiger*, 523 U.S. 57, 61 (1998)).

16

triggers in the lawyer's mind the category 'intentional torts,' as distinguished from negligent or reckless torts. Intentional torts generally require that the actor intend 'the *consequences* of an act,' not simply 'the act itself.'"[58] "A willful injury may be established by direct evidence that the debtor acted with the specific intent to harm a creditor or the creditor's property, or by indirect evidence that the debtor desired to cause the injury or believed the injury was substantially certain to occur."[59] The standard is subjective.[60]

"For an injury to be 'malicious,' 'evidence of the debtor's motives, including any claimed justification or excuse, must be examined to determine whether the requisite 'malice' (in addition to 'willfulness') is present."[61] All of the "surrounding circumstances, including any justification or excuse offered by the debtor, are relevant to determine whether the debtor acted with a culpable state of mind vis-a-vis the actual injury caused the creditor."[62] "A willful and malicious injury requires more than negligence or recklessness."[63]

---

[58] *Id*. (quoting *Kawaauhau*, 523 U.S. at 61-62).

[59] *Id*.

[60] *Id.*

[61] *Id.* (quoting *Dorr, Bentley & Pecha v. Pasek (In re Pasek)*, 983 F.2d 1524, 1527 (10th Cir. 1993)).

[62] *Id.* (quoting *In re Pasek*, 983 F.2d at 1527).

[63] *Id.*

17

In the Final Award, the arbitrator concluded Dr. Hulse published a defamatory statement and damaged the goodwill of Dr. Swan's dental practice. Under the relevant state law applicable to the defamation claim, the arbitrator necessarily thus found: Dr. Hulse published false statements not subject to privilege, the statements "were published with the requisite degree of fault," and the statements resulted in damages.[64] The degree of fault required for the defamation finding under state law is negligence.[65]

As the Bankruptcy Court correctly noted, willful and malicious acts require more than what is required for defamation under Utah law.[66] To grant summary judgment to Dr. Swan, the undisputed facts needed to show that Dr. Swan was entitled to judgment as a matter of law on the issues of whether Dr. Hulse desired to cause him injury with his defamatory statement, and whether Dr. Hulse had a malicious state of mind. We conclude

---

[64] *Jacob v. Bezzant*, 212 P.3d 535, 543 (Utah 2009) ("A prima facie case for defamation must demonstrate that (1) the defendant published the statements [in print or orally]; (2) the statements were false; (3) the statements were not subject to privilege; (4) the statements were published with the requisite degree of fault; and (5) the statements resulted in damages." (internal quotations omitted)).

[65] *See Wayment v. Clear Channel Broad., Inc.*, 116 P.3d 271, 283 n.13 (Utah 2005) ("[A] defamation plaintiff who is not a public figure must . . . establish negligence on the part of the defendant in order to recover damages.").

[66] The Bankruptcy Court first concluded the *Rooker-Feldman* doctrine applied, and precluded redetermination of the findings in the Final Award of the arbitration, as confirmed by the state court. *Transcript* at 10, *in* Appellee's App. at 263. The Bankruptcy Court then moved on to "the dischargeability aspect of the debt owed," *id.*, and correctly noted the willful and malicious injury required by § 523(a)(6) "is a step up" from the elements of defamation under state law. *Id.* at 13, *in* Appellee's App. at 266. The Bankruptcy Court therefore did not rely on issue preclusion or the *Rooker-Feldman* doctrine to conclude Dr. Hulse acted willfully and maliciously as a matter of law.

the Bankruptcy Court erred in its determination that there were no genuine issues of material fact with regard to both the willful and malicious prongs of § 523(a)(6).

First, regarding willfulness, the record is rife with disputes concerning Dr. Hulse's intent. Dr. Hulse has maintained throughout—both in the arbitration proceeding and at the Bankruptcy Court—that his Facebook post was "private." Dr. Swan contends it was a "public" post. There is no dispute Dr. Hulse "published" a statement—the Final Award concluded Dr. Hulse was guilty of defamation, so by definition, he published a statement—but the private versus public distinction goes to both the intent of that published statement and the damages therefrom. If Dr. Hulse's post was seen by a large number of people, then maybe it will be easy to conclude he intended to damage the goodwill of Dr. Swan's dental practice. If Dr. Hulse's post was seen by relatives who live out of the area, plus a few of his local actual friends, then different conclusions can be drawn. The number and nature of people involved gives us an indication of the degree of fault of his post. If "private" means only a small number of people who are not close to the situation, his behavior may have been negligent. If "private" means many people who are potential or actual clients, then it is easier to conclude there was an intent to injure. The Bankruptcy Court did not acknowledge or address this factual dispute.

Rather, in its oral ruling, the Bankruptcy Court found willfulness based on Dr. Hulse's "admission of anger and urge for violence toward [Dr. Swan],"[67] referring to his testimony at the arbitration hearing in July 2020 about his feelings when he made the

---

[67] *Id.* at 15, *in* Appellee's App. at 268.

November 2019 post. The Bankruptcy Court also concluded Dr. Hulse's "admission that he wished more than just his Facebook [friends] . . . would see the [November 2019 Facebook] post" in his summary judgment briefing in October 2021 supported a conclusion that "the injury to the dentistry goodwill was both contemplated as well as was substantially certain to occur."[68]

But both admissions, made long after the Facebook post, fall short of conclusively establishing intent. In his testimony at the arbitration proceeding in July 2020, Dr. Hulse: (1) stated his "level of frustration [in November 2019]. . . was a private Facebook post to my friends" and he implied "going after" his "private family . . . [made him] angry" (in November 2019), and (2) wished (in July 2020) he had done more (a punch) and involved more people in November 2019.[69] The first is an admission in July 2020 that he was angry in November 2019. The second is the internal wishes of Dr. Hulse, contemplated after the fact in July 2020 of what he felt he should have done in November 2019. There are more fact issues. Does Dr. Hulse's testimony about a physical punch never taken *necessarily* demonstrate that Dr. Hulse intended to harm Dr. Swan's dental practice with an allegedly private Facebook post? Does Dr. Hulse's after-the-fact statement that he wished more people had seen his Facebook post shed light on the intent he had while making the defamatory post? These are fact issues for trial, not summary judgment.

---

[68] *Id.*

[69] *Arbitration Day 2 Transcript of July 09, 2020* at 391-92, *in* Appellant's App. at 95-96.

The Bankruptcy Court also shorted the malice prong under § 523(a)(6). The malice prong requires a court to assess a debtor's motives. Regarding maliciousness, the Bankruptcy Court concluded there was "little doubt of [Dr. Hulse's] wrongdoing," and then assessed whether Dr. Hulse was excused or justified in his behavior.[70] But again, for an injury to be "malicious," a court must assess the evidence of the debtor's motives. Here, there are disputed facts concerning the debtor's motives. Was he blowing off steam because he was angry (negligence or recklessness), or trying to injure Dr. Swan (maliciousness)?

To reiterate, the Final Award entered by the arbitrator conclusively established only defamation under state law. There is no dispute of fact as to whether the Facebook post was made (published) and what it stated. But defamation under Utah state law requires only a negligent degree of fault. Judgment as a matter of law on a claim under § 523(a)(6) requires *undisputed* facts that show more. There are disputed facts here, and thus room for a trier of fact to make differing conclusions on those disputed facts. Accordingly, the Bankruptcy Court erred in entering the Summary Judgment Order and finding the debt at issue nondischargeable under § 523(a)(6).

---

[70] *Transcript* at 16, *in* Appellee's App. at 269. The Bankruptcy Court relied on the conclusion from the arbitrator in the Final Award that Dr. Hulse "unreasonably interpreted" Dr. Swan as blackmailing him with the pictures found at the dental office and concluded there was no viable excuse or justification for the wrongful actions. *Id.* at 16-17, *in* Appellee's App. at 269-70. We do not assess the "justification or excuse" portion of the malicious conclusion, because we believe the Bankruptcy Court erred at the initial assessment of evidence of motives.

21

### D.     Damages for the Willful and Malicious Injury

Even if Dr. Swan had properly established the willful and malicious nature of the injury leading to the debt Dr. Hulse owed him, this Panel concludes the Bankruptcy Court did not give proper attention to the question of damages from that injury. There are two steps in a nondischargeability proceeding. Is there a debt arising from the "prohibited" acts listed in § 523(a)? If yes, what is the amount of the debt stemming from those acts? Simply because Dr. Hulse owes Dr. Swan a debt, does not mean that the entirety of the debt owed stems from a willful and malicious injury.

As noted above, the arbitrator: (1) awarded Dr. Swan $345,000 against Dr. Hulse "for breach of contract and defamation,"[71] (2) required Dr. Hulse to bear the costs of the arbitrator's fees and administrative fees, and (3) awarded $310,739 in attorneys' fees and costs to Dr. Swan. The $345,000 figure was computed as the damages for the breach of contract claim, because the arbitrator concluded Dr. Hulse damaged the goodwill of Dr. Swan's dental practice in that amount through his breaches of contract. No separate award of damages was made for the defamation claim, because the arbitrator concluded the damages for defamation were "sufficiently compensated by the $345,000 award."[72] And then the $310,739 in fees and costs were the "fees and costs incurred by [Dr. Swan], including in the initial lawsuit, in mediation, and in arbitration,"[73] with citation to the provision of the Asset Purchase Agreement that allowed for fees for "enforcement" of the

---

[71] *Final Award* at 2, *in* Appellant's App. at 22.

[72] *Id.*

[73] *Id.* at 7, *in* Appellant's App. at 27.

rights under that Agreement. Finally, the remaining amount for the arbitrator's fees was also awarded under provisions of the Asset Purchase Agreement.

The Bankruptcy Court only briefly addressed Dr. Hulse's argument that no damages were awarded for defamation. The Court apparently found the notation in the Final Award that $345,000 was awarded "for a breach of contract and defamation" to be sufficient.[74] Without further discussion of the amount of the debt to be discharged, the Bankruptcy Court concluded the entirety of the proof of claim—for damages, attorneys' fees and costs, and the costs of arbitration—should be concluded nondischargeable. The Bankruptcy Court noted that attorneys' fees were part of the award and would not have been necessary "had [Dr. Hulse] not made the defamatory statement."[75]

Again, there are unsettled factual issues. The injury alleged was harm to the goodwill of Dr. Swan's dental practice. As discussed above, not only does Dr. Hulse's intent need to be established, so do the damages from that alleged willful and malicious injury. Is the goodwill that was damaged as part of the contract breaches that occurred in July 2019 the same as the goodwill that was damaged as part of the defamation that occurred in November 2019? Perhaps the public versus private nature of the Facebook post is just as important to the damages question. If the Bankruptcy Court ultimately concludes that Dr. Hulse willfully and maliciously intended to injure the goodwill of Dr. Swan's dental practice with the Facebook post, can Dr. Swan prove the amount of his

---

[74] *Transcript* at 19, *in* Appellee's App. at 272.

[75] *Id.* at 20, *in* Appellee's App. at 273.

damages that stemmed from this Facebook post? The damages were awarded as

compensation for the loss of goodwill resulting from the July 2019 letters sent by Dr.

Hulse, not from the November 2019 Facebook post, yet loss of goodwill from the

November 2019 Facebook post was "sufficiently compensated" by the damages for loss

of goodwill from the July 2019 letters? The Bankruptcy Court did not address these

questions. Not only does the *fact* of injury need to be established to succeed on a

nondischargeability claim under § 523, but also the *amount* of debt—the damages—

stemming from that injury must be established. Without sufficient factual findings (from

the arbitrator or the Bankruptcy Court) to apportion the nondischargeable defamation

damages from dischargeable breach-of-contract damages, the Bankruptcy Court erred in

finding the entire $345,000 of underlying damages nondischargeable.[76]

Likewise, the Bankruptcy Court erred by finding all the associated fees and costs

(including arbitration costs) and other ancillary damages granted in the Final Award were

nondischargeable. Although any debt—such as attorneys' fees and interest—arising from

nondischargeable conduct would also be nondischargeable,[77] not all debt necessarily

---

[76] *Murphy v. Snyder (In re Snyder)*, 939 F.3d 92, 103–04 (2d Cir. 2019) ("However, nothing in *Cohen* [the Supreme Court case cited below] bars a court from determining whether only a portion of a contested debt 'arose from' the amounts obtained through defalcation, and thus is nondischargeable.").

[77] *See Cohen v. de la Cruz*, 523 U.S. 213, 218-19 (1998) (holding that once it is established that specific money or property has been obtained by fraud, then "any debt" arising therefrom is excepted from discharge, including treble damages assessed on account of the fraud). Courts have applied *Cohen*'s reasoning to other subsections of § 523(a) and concluded that the dischargeability of ancillary obligations such as attorneys' fees and interest are determined by the nondischargeable nature of the

arises from nondischargeable conduct. Thus, any ancillary damages that do not arise from the nondischargeable conduct would be dischargeable.[78]

Here, the arbitrator found that Dr. Hulse breached the arbitration provision in the Asset Purchase Agreement by initially filing suit in state court rather than bringing an arbitration claim. The arbitrator found that this breach caused damage to Dr. Swan through the need to expend attorney's fees and costs. Those fees and costs could not possibly have arisen from Dr. Hulse's defamatory Facebook post, which occurred after the parties were in arbitration, so there is no basis to find this portion of the award nondischargeable.[79] The Bankruptcy Court made no findings concerning how much of the $310,739 in attorney's fees awarded to Dr. Swan in the arbitration were incurred because of the allegedly nondischargeable conduct (the willful and malicious injury to the goodwill of Dr. Swan's dental practice). The only authority cited by the arbitrator for awarding fees and costs is the Asset Purchase Agreement, and fees for breach of contract would be dischargeable along with damages for breach of contract. Accordingly, the Bankruptcy Court erred by awarding the full amount of the Final Award on the § 523(a)(6) claim.

---

underlying primary debt. *See, e.g., Gober v. Terra + Corp. (In re Gober)*, 100 F.3d 1195, 1208 (5th Cir. 1996); *In re Larson*, 862 F.2d 112, 119 (7th Cir. 1988).

[78] *Cherry v. Neuschafer (In re Neuschafer)*, 514 B.R. 719, at *8-9 (10th Cir. BAP 2014) (unpublished).

[79] Dr. Hulse filed suit in state court in August 2019, the parties were ordered to arbitration in October 2019, and the Facebook post happened in November 2019.

25

## IV.    Conclusion

Genuine issues of material fact remain on Dr. Swan's § 523(a)(6) claim, and the Bankruptcy Court erred in granting summary judgment on that claim. We therefore reverse and remand to the Bankruptcy Court for further proceedings consistent with this opinion.